# Proposed Legislation Providing Authority for the Armed Forces to Recover Remains of Persons Deceased as a Result of Armed Forces Operations

Congress' authority to make rules for the United States armed forces under the Constitution, art. I, § 8, cl. 14, allows it to enact legislation governing the recover of the remains of members of the armed forces. Any grant to the armed forces of jurisdiction over the remains of non-military persons killed as a result of armed forces operational activities, however, may exceed Congress' constitutional authority.

February 20, 1987

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL,
OFFICE OF LEGISLATIVE AFFAIRS

A proposed bill would give the armed forces "primary jurisdiction to recover and examine the remains of (1) any member of an armed forces; or (2) any other person, . . . whose death is believed to have been the result of any operational activity of the armed forces." According to the Department of Defense, at present:

> [J]urisdiction to recover the remains and investigate the death of any person generally rests with the government having jurisdiction over the location where the remains were found, regardless of the cause or suspected cause of death. In the United States, such jurisdiction generally rests with State or local governments, because Federal legislation has not preempted that right.

Consequently, "the armed forces are often denied, or are unable to obtain, the kind of information which could be obtained from full post-mortem examinations."

We see no constitutional impediment to a statute giving the armed forces primary jurisdiction over the remains of members of the armed forces. Such a statute would seem to fall squarely within Congress' power under Article I, § 8, cl. 14 of the Constitution "[t]o make Rules for the Government and Regulation of the land and naval Forces."

The proposed bill, however, goes further. It potentially would preempt most state authority over the remains of anyone who is believed to have been killed as a result of any military operations. Examples would include those killed as a result of a military jet crashing in a residential area or those killed as a result of poisonous gas leaked from a military transport truck. The power to make rules

22

for the armed forces does not extend this far. *See Kinsella* v. *United States ex rel. Singleton*, 361 U.S. 234 (1960). In that case, the Supreme Court rejected the claim that Congress has power to subject civilians to court martial jurisdiction under Article I, § 8, cl. 14, noting that power extends only to persons whose "*status* . . . can be regarded as falling within the term 'land and naval Forces.'" *Id.* at 241 (emphasis in original). The Court continued:

> Without contradiction, the materials furnished show that military jurisdiction has always been based on the "status" of the accused, rather than on the nature of the offense. To say that military jurisdiction "defies definition in terms of military 'status'" is to defy the unambiguous language of Art. I, § 8, cl. 14, as well as the historical background thereof and the precedents with reference thereto.

*Id.* at 243 (footnote omitted).

The Necessary and Proper Clause does not enhance Congress' power to enact the proposed bill.[1] That Clause empowers Congress "[t]o make all Laws which shall be necessary and proper for carrying into Execution [Congress' enumerated powers], and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." Although the Necessary and Proper Clause affords Congress wide latitude in the choice of means to accomplish ends within the purview of its enumerated powers, *see McCulloch* v. *Maryland* 6, 17 U.S. (4 Wheat.) 316, 420 (1819), it confers no additional substantive authority. Thus, if Congress' power under Article I, § 8, cl. 14 extends only to members of the land and naval forces, then the Necessary and Proper Clause cannot be interpreted to give Congress the power to regulate civilians as a means of regulating the armed forces.[2] This was the conclusion of the Court in *Kinsella, supra.* Thus, after concluding that Article I, § 8, cl. 14 extends only to actual members of the armed forces, the Court rejected the contention that the Necessary and Proper Clause authorizes Congress to "include civilian dependents within the term 'land and naval forces' as a proper incident to [the Article I, § 8, cl. 14] power and necessary to its execution." *Id.* at 247–48.[3]

---

[1] It may, however, be possible to read Congress' enumerated powers, in conjunction with the Necessary and Proper Clause, to authorize the application of certain military regulations to civilians who have voluntarily subjected themselves to such regulation, such as the civilian pilot of a chartered military flight. Unlike the regulation of civilians generally, regulation of such individuals may be necessary "[t]o raise and support Armies," and "[t]o provide and maintain a Navy."

[2] This is so even though as an administrative matter it may sometimes be difficult to distinguish between the remains of those who are, and those who are not, members of the armed forces. Although there may be an argument that a statute giving the military initial jurisdiction over remains in these more limited circumstances would be constitutional, the bill as drafted is not so limited.

[3] Nor can the statute be justified as a necessary and proper means of carrying into execution "the executive Power" or that attendant to the President's role as "Commander in Chief" or any of the other powers vested "in the Government of the United States, or in any Department or Officer thereof." The Department of Defense does not reveal how the States' primary jurisdiction over the remains of civilians killed as a result of military operations would affect the President's ability to exercise the executive power or to function as Commander in Chief.

23

To be upheld, the proposed bill must be a proper exercise of one of Congress' other enumerated powers. Although the Supreme Court has interpreted the Commerce Clause expansively, *see Perez* v. *United States*, 402 U.S. 146 (1971); *Daniel* v. *Paul*, 395 U.S. 298 (1969); *Wickard* v. *Filburn*, 317 U.S. 111 (1942), reliance on the commerce power in this instance presses even the extraordinary breadth of the commerce power found by the Supreme Court, and, in our view, disregards the enumerated power most relevant[4] and in so doing invades a core responsibility and prerogative of the States' reserved powers. Although we cannot say with confidence that the Court would refuse to uphold even this extraordinary measure as an appropriate exercise of the commerce power, *see Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985), neither can we conclude that the bill would not exceed Congress' admittedly broad commerce power.

Under these circumstances, we do not believe it is appropriate for the administration to propose legislation that requires Congress to rely on a virtually unlimited view of the commerce power. Therefore, we suggest that the bill be redrafted to apply only to the remains of members of the armed forces.

DOUGLAS W. KMIEC
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[4] There is an additional consideration that is not without force. If, as we think, Congress is not empowered to preempt the States' jurisdiction over the remains of civilians under the enumerated power most closely related to the purpose of the bill — the power to make rules governing the armed forces — then the commerce power should not lightly be interpreted to circumvent the limitation inherent in the delegation of that power. For example, Article I, § 8, cl. 4 empowers Congress "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." This power does not authorize Congress to enact private bankruptcy laws. *See Railway Labor Executives' Ass'n* v. *Gibbons*, 455 U.S. 457 (1982). Thus, it would be legally questionable to interpret the Commerce Clause to authorize Congress to enact nonuniform bankruptcy laws.